769 F.2d 1088
 10 Soc.Sec.Rep.Ser. 354, Medicare&Medicaid Gu 34,878
Stella Beatrice STEWART, Plaintiff-Appellant,
v.
Robert BERNSTEIN, in his official capacity as Commissioner
of the Texas Health Department, et al.,
Defendants-Appellees.
 No. 84-2352.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 3, 1985.
 
 East Texas Legal Services, Brenda Gale Willett, Nacogdoches, Tex., for plaintiff-appellant.
 Bob Wortham, U.S. Atty., Beaumont, Tex., Steven M. Mason, Tyler, Tex., for Heckler.
 Michael H. Patterson, San Antonio, Tex., Jim Mattox, Atty. Gen., Austin, Tex., for Bernstein, et al.
 Stephen Greenberg, Sheila Asher, Austin, Tex., for Vaughn, et al.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before GOLDBERG, TATE and JOLLY, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 Appellant Stella Stewart is a Medicaid recipient who, from May of 1979 to November of 1980, resided at the Kilgore Nursing Center (KNC), a private nursing home located in Texas. On November 18, 1980, the administrator of KNC, Steve Vaughn, notified appellant by letter that she would have to leave the facility within three days. Ms. Stewart maintains that on the third day, she was involuntarily taken from the Center and deposited at the Henderson Memorial Hospital, where no one had arranged in advance for her admission. When appellant's husband and daughter later returned to the Center seeking information about the transfer, they discovered that appellant's room had been rented out to another resident, her belongings removed.
 
 
 2
 This appeal arises from appellant's class action suit filed in federal court pursuant to title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. Secs. 1396-1396q, the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, and a number of pendent state law theories. Stewart sought damages and declaratory and injunctive relief against the H.H. Holding Co., Inc., d/b/a Kilgore Nursing Center, Steve Vaughn, and the Commissioners of the Texas Department of Human Resources and the Texas Department of Health, alleging that she had been involuntarily discharged from the Center in violation of her federal equal protection, due process, and statutory rights.[1] In particular, she alleged that the private defendants had discharged her on impermissible grounds as set forth in the federal Medicaid regulations, 42 C.F.R. Secs. 405.1101-.1137, 442.300-.346, and that the state agencies had facilitated her discharge by failing to promulgate regulations requiring private nursing homes such as KNC to comply with the Medicaid Act and its implementing regulations. Appellant's chief goal is to obtain state regulations prohibiting private nursing homes from discharging or transferring residents for any reason without at least five days' notice and an opportunity for a hearing prior to the discharge or transfer.
 
 
 3
 In a series of written orders, the district court dismissed each of appellant's federal claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The court eventually dismissed appellant's pendent state claims as well, though without prejudice to her right to refile these claims in state court. We affirm.
 
 
 4
 * Medicaid is a program whereby participating states work with the federal government to provide medical assistance to qualified recipients. As we previously described the system,
 
 
 5
 Participating states receive a proportional reimbursement from the federal government for expenses incurred in providing medical services for eligible medicaid patients. In order to participate in the Medicaid program, a state must submit a plan to the Secretary of [Health and Human Services (HHS) ] for approval, and the plan must comply with all requirements of 42 U.S.C. Sec. 1396a. The state must also provide for a system under which the single state agency responsible for the program shall be responsible for fulfillment of hearing provisions. Once a state plan is approved, the state agency responsible for the program is authorized to contract with public and private institutions for the rendering of medical services to eligible recipients.
 
 
 6
 Taylor v. St. Clair, 685 F.2d 982, 985 (5th Cir.1982) (citations and footnote omitted).
 
 
 7
 Texas has a federally approved state Medicaid plan, which is administered by the Texas Department of Human Resources (TDHR). Under the state plan, individuals reside in either "skilled nursing facilities" or "intermediate care facilities." By contract with TDHR, the Texas Department of Health receives and investigates the complaints of Medicaid recipients concerning their nursing home care.
 
 
 8
 In seeking to hold the state defendants liable for her transfer out of KNC, appellant must establish that she was deprived of a federal constitutional or statutory right under color of state law. E.g., Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 156-57, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); Frazier v. Board of Trustees, 765 F.2d 1278, 1282-83 (5th Cir.1985). It is clear, however, that a state cannot be held responsible for the decisions of a private nursing home to discharge or transfer a patient. Blum v. Yaretsky, 457 U.S. 991, 1012, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982); Taylor, 685 F.2d at 987-88; cf. O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 787, 100 S.Ct. 2467, 2476, 65 L.Ed.2d 506 (1980) (state's decertification of private nursing facility has only "indirect and incidental" impact on residents). Since appellant cannot meet the under-color-of-law requirement of section 1983, her claim against the state defendants must fail.
 
 
 9
 Appellant attempts to avoid this result by asserting that the state lacks regulations sufficient to protect Medicaid recipients from having their federal statutory and regulatory "rights"[2] infringed. In appellant's words,
 
 
 10
 Plaintiff does not seek to hold the state defendants responsible for the nursing home's eviction of Stella Stewart, but does seek to hold them responsible for failure to have policies and procedures for protecting the specific rights set out in the federal regulations for the benefit of transferred nursing home patients. [TDHR] has abdicated its responsibility for enforcing those portions of the Medicaid regulations designated as "Patients' Rights" and has neglected to monitor compliance.
 
 
 11
 Brief for Appellant at 18. Since in Blum the Supreme Court expressly pretermitted the issue of state noncompliance with specific federal or state regulations, 457 U.S. at 1003, 1012 n. 22, 102 S.Ct. at 2785, 2790 n. 22, appellant contends that the state's regulatory omissions can render it liable in this case.[3]
 
 
 12
 The theory is creative but flawed. While the federal Medicaid regulations do provide that patients be given "reasonable advance notice to ensure orderly transfer or discharge," 42 C.F.R. Sec. 405.1121(k)(4), our holding that there was no state action in Taylor covered a plaintiff class comprising "all Medicaid patients who have been or are being or will in the future be terminated from nursing home service without the benefit of prior written notice and an evidentiary hearing to determine whether just cause exists under the Patient's Bill of Rights [42 C.F.R. Sec. 405.1121] for such termination." 685 F.2d at 984. In Taylor, as here, the private nursing home's decision to discharge the plaintiff allegedly violated the federal notice and hearing requirements. See id. at 985, 987 n. 13. We nevertheless held that section 1983's state action requirement of private conduct "fairly attributable" to the state foreclosed the position that the state's regulatory action or inaction subjected it to civil rights liability. Id. at 987-88; see Blum, 457 U.S. at 1002-03, 102 S.Ct. at 2784-85; Frazier, at 1283-85. As the district court properly noted in this case, appellant effectively relinquishes her claim by "not seek[ing] to hold the state defendants responsible for the nursing home's eviction of Stella Stewart." Brief for Appellant at 18. Since it is a wrongful eviction of which appellant complains, anything less than state responsibility for that action is insufficient to state a claim for relief under section 1983.
 
 
 13
 Appellant faces another predicament in her claim against the state appellees: article III standing. A plaintiff must " 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976)." Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In the present case, appellant argues that the state appellees are not "responsible for the ... eviction," but that they are instead "responsible for failure to have policies and procedures" effectuating patients' federal regulatory rights. At the same time, however, she recognizes that any relief that might issue against the state appellees mandating new policies and procedures would not necessarily prevent similar conduct by private nursing homes in the future. As the district court observed,
 
 
 14
 Plaintiffs' argument ... does not allege that the state defendants caused in any way her eviction from KNC. It does not allege that the state defendants failed to perform any existing duty, or that [they] failed to enforce any existing laws or regulations that they were authorized to enforce. Furthermore, plaintiffs concede that, even if this court ordered the state defendants to adopt all the procedures plaintiffs propose, future illegal discharges would still occur if the private nursing home ignored those procedures, just as, it is alleged, KNC ignored its existing responsibilities under 42 C.F.R. Sec. 405.1121(k)(4)-(5) in November of 1980. If private nursing facilities were to illegally discharge members of the plaintiff class in the future, after adoption of the regulations plaintiffs seek, plaintiffs concede that the state defendants could not be held responsible for such "isolated incidents." By acknowledging the fact that the plaintiffs might still suffer precisely the same injuries even if all the relief they seek were granted, plaintiffs establish that they have "failed to allege a sufficient nexus between [their] injury and the government action which [they] attack[ ]." Linda R.S. v. Richard D., 410 U.S. 614, 617-18 [93 S.Ct. 1146, 1148-49, 35 L.Ed.2d 536] (1973).
 
 
 15
 Order Upon Plaintiffs' Motion for Reconsideration, slip op. at 11-12, Record vol. 2 at 164-65. Appellant's inability to demonstrate state action thus reflects a similar absence of standing to assert her claims against the state appellees.[4] In short, we agree with the district court that "[p]laintiffs' complaint, properly understood, amounts to a naked legislative proposal, addressed to the wrong branch of the wrong government." Id. at 12, Record vol. 2 at 165. These state agencies cannot be taken to task for decisions in which they played no part.
 
 II
 
 16
 Appellant claims in addition that the Medicaid Act affords her an implied cause of action against the private appellees, KNC and its administrator, Steven Vaughn. On this view, the Act and its implementing regulations confer substantive rights, such as pre-transfer notice and hearing, that are enforceable in a civil action against private facilities. We again disagree.
 
 
 17
 The threshold question is whether Congress intended to create a judicially enforceable cause of action between Medicaid residents and their private nursing homes.[5] E.g., Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 15, 101 S.Ct. 1531, 1538, 67 L.Ed.2d 694 (1981); Universities Research Association, Inc. v. Coutu, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); Touche Ross & Co. v. Redington, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979); see Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Appellant has pointed to nothing in either the statute or the legislative history suggesting that Congress intended to create such a remedy.[6] Instead, appellant argues that her right to sue under the Act arises by implication from the availability of section 1983 suits against states for the violation of substantive rights under the Social Security Act. See, e.g., Maine v. Thiboutot, 448 U.S. 1, 5-6, 100 S.Ct. 2502, 2504-2505, 65 L.Ed.2d 555 (1980). Since section 1983 could not support claims against states absent an underlying enforceable statutory right, the theory runs, the Act must furnish substantive rights enforceable in civil suits between private parties.
 
 
 18
 We need not address the many troubling issues raised by appellant's ipso facto reasoning. Suffice it to say that the theory is nothing more than an imprecise bootstrap for the argument that Congress intended to create a private cause of action under the Act enforceable by residents against their private nursing homes. Absent any direct evidence of this intent, appellant has no federal cause of action against the private appellees.[7] "The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." California v. Sierra Club, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981); see also Perry v. Housing Authority of Charleston, 664 F.2d 1210, 1213, 1217 (4th Cir.1981). Such remedies are for Congress to state or to clearly imply, not for us to infer.
 
 
 19
 In a related vein, appellant also contends that if we do not construe the Act to allow private suits such as hers, then the Act will have created rights with no remedies--a result Congress clearly could not have intended. Even if we acknowledge, however, that the Act creates some substantive rights, see generally O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 784-88, 100 S.Ct. 2467, 2474-76, 65 L.Ed.2d 506 (1980) (dismissing "contours of the right[s] conferred by the [Medicaid] statutes and regulations"), the statute does contain numerous provisions short of judicial enforcement that are designed to redress recipients' grievances. For example, a recipient whose claim for assistance is denied or unreasonably delayed has a right to a hearing before the state Medicaid agency. 42 U.S.C. Sec. 1396a(a)(3). Nursing facilities that fail to meet the requirements of 42 U.S.C. Sec. 1395x(j) (skilled nursing facilities) or Sec. 1396d(c) (intermediate care facilities) face termination of their certification to participate in the Medicaid program or suspension of payments. Id. Sec. 1396a(i). The state health agency must periodically inspect nursing facilities to determine if deficiencies exist. Id. Sec. 1396a(a)(26). If the state violates any of the federal statutory or regulatory requirements, a recipient's remedy is against either the state directly, where the act or omission has caused the grievance, see, e.g., Alabama Nursing Home Association v. Harris, 617 F.2d 388, 396 (5th Cir.1980), or against the federal agency charged with enforcing the Medicaid Act, HHS. See, e.g., Pennhurst, 451 U.S. at 28, 101 S.Ct. at 1545; Estate of Smith v. Heckler, 747 F.2d 583, 589 (10th Cir.1984); 42 U.S.C.A. Sec. 1396b(g)(7) (West Supp.1985). The Medicaid system is a cooperative federal-state venture, see Harris v. McRae, 448 U.S. 297, 308, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980); Michael Reese Physicians & Surgeons, S.C. v. Quern, 606 F.2d 732, 735 (1979), adopted en banc, 625 F.2d 764 (7th Cir.1980) (per curiam), cert. denied, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981), and if a state chooses to participate, it stands to lose its federal funding if it fails to comply with the federal statute and regulations, Schweiker v. Gray Panthers, 453 U.S. 34, 36-37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981); Mississippi Hospital Association, Inc. v. Heckler, 701 F.2d 511, 515 (5th Cir.1983); Alabama Nursing Home Association, 617 F.2d at 396. The Act contemplates certain kinds of judicial enforcement to secure certain kinds of individual rights;[8] it does not envision suit by a recipient against her private provider of services.
 
 
 20
 The present situation is typical of congressional plans in which the primary financial and regulatory relationship is between the federal government and participating states; in such cases, the states retain chief enforcement responsibilities, while the federal agency oversees the sufficiency and efficacy of the states' efforts. See, e.g., Pennhurst, 451 U.S. at 11-14, 101 S.Ct. at 1536-38; McRae, 448 U.S. at 308-09, 100 S.Ct. at 2683-84; Rosado v. Wyman, 397 U.S. 397, 420, 90 S.Ct. 1207, 1221, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). Private providers of services, such as the nursing home in this case, derive their obligations from state law and through their contractual agreements with the states, not from title XIX. O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 787 & n. 20, 100 S.Ct. 2467, 2476 & n. 20, 65 L.Ed.2d 506 (1980); see Bumpus v. Clark, 681 F.2d 679, 682 (1982), withdrawn as moot, 702 F.2d 826 (9th Cir.1983). If appellant merits relief, it lies in these state-based sources.[9]
 
 III
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Appellant also sued several other state officials as well as the Secretary of the United States Department of Health and Human Services. She does not, however, contest the dismissal of her claims against these defendants
 
 
 [2]
 Because our holding rests on the absence of action under color of state law, we need not address the nature of the substantive rights available through the Social Security Act that are enforceable against the state under Sec. 1983. See Taylor, 685 F.2d at 988; cf. Mitchell v. Johnston, 701 F.2d 337, 346 (5th Cir.1983) (considering adequacy of state's compliance with Medicaid Act); Kimble v. Solomon, 599 F.2d 599, 604 (4th Cir.) (considering adequacy of state's compliance with Medicaid regulations), cert. denied, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979)
 
 
 [3]
 Appellant asserts that Blum concerned state action solely for purposes of the fourteenth amendment, without regard to a state's denial of federal statutory rights under Sec. 1983. Brief for Appellant at 18; see Blum, 457 U.S. at 993, 102 S.Ct. at 2780. Inferring that the appellant's distinction is meant to define state action more narrowly where constitutional as opposed to statutory deprivations are alleged, we are nonetheless unprepared to say either that the dichotomy holds water or that it is necessitated by the case law. Section 1983's under-color-of-law requirement may not be congruent with state action, but the fact that these state appellees had nothing to do with Ms. Stewart's transfer makes this an inappropriate case for confronting so elusive an issue. Cf. id. at 1012 n. 1, 102 S.Ct. at 2790 n. 1 (Brennan, J., dissenting); Frazier, at 1283 n. 7
 
 
 [4]
 Since appellant's transfer was not occasioned by any acts or omissions of the state appellees, we need not consider the adequacy or inadequacy of state administrative procedures regarding such transfers
 
 
 [5]
 The district court misapplied our holding in Taylor to dismiss plaintiff's Medicaid Act claims against the private defendants. In Taylor, we affirmed the dismissal of similar claims against state defendants because there was no state action for purposes of Sec. 1983. 685 F.2d at 688. Since appellant argues for an implied cause of action against private parties, however, this issue cannot be resolved on the ground that proved dispositive in Taylor, where Sec. 1983 was the exclusive statutory route for securing state compliance with the Social Security Act. See Maine v. Thiboutot, 448 U.S. 1, 6, 100 S.Ct. 2502, 2505, 65 L.Ed.2d 555 (1980)
 
 
 [6]
 Indeed, appellant concedes that "the legislative history of the Medicaid Act does not explicitly state the Congressional intent with regard to a private cause of action." Reply Brief for Appellant at 10. While a silent legislative history does not necessarily preclude the existence of an implied remedy, Cannon v. University of Chicago, 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979) (quoting Cort v. Ash, 422 U.S. 66, 82, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975)), neither does congressional silence create a presumption in favor of a judicial remedy, Perry v. Housing Auth. of Charleston, 664 F.2d 1210, 1213 (4th Cir.1981)
 The only "rights" cited by appellant appear in the federal regulations and protect, among other things, a patient's ability to refuse medication, to be transferred for good cause, and to receive adequate notice and pre-transfer preparation. 42 C.F.R. Sec. 405.1121(k); see also id. Sec. 442.311 (ICF patients' bill of rights). As we note below, these regulatory rights are enforceable by means other than a civil suit under the Medicaid Act against a private provider of services. In any event, the federal regulations cannot themselves create a cause of action; this is a job for the legislature. Cf. Marshall v. Gibson's Prods., 584 F.2d 668, 677 (5th Cir.1979) ("A grant of federal rulemaking power is not authority to create federal jurisdiction. That authority lies solely with Congress." (footnote omitted)); Roberts v. Cameron-Brown Co., 556 F.2d 356, 360 (5th Cir.1977) (administrative handbook could not support an implied cause of action absent independent basis in statute).
 
 
 [7]
 Although we sympathize with the concern over "transfer trauma" that often accompanies the displacement of elderly and infirm nursing home residents, title XIX simply does not contain the sort of substantive protection appellant seeks. The most nearly applicable statutory provision appears at 42 U.S.C. Sec. 1396a(a)(19), which requires that a state plan for medical assistance
 provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients[.]
 See also id. Sec. 1396a(a)(33) (providing that state health agency must establish plan consistent with federal regulations for reviewing quality of funded care and services). As the Ninth Circuit has observed, however,
 Section 1396a(a)(19) is not the sort of specific condition for receipt of federal funds which can be said to create substantive rights in Medicaid recipients....
 Section 1396a(a)(19) speaks to two sometimes conflicting goals: simplicity of administration and the best interests of the recipients. Whether a state plan strikes a proper balance between the two is a decision better left to the Department of Health and Human Services and the state agencies responsible for implementing Title XIX.
 Bumpus v. Clark, 681 F.2d 679, 683 (1982), withdrawn as moot, 702 F.2d 826 (9th Cir.1983); see also Punikaia v. Clark, 720 F.2d 564, 570 (9th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 83, 83 L.Ed.2d 30 (1984).
 
 
 [8]
 We note that appellant has specifically abjured some of these avenues. Appellant stated below that she did not seek cancellation of KNC's contract, Record vol. 2, at 205, nor did she seek cancellation of the state's Medicaid certification. Moreover, appellant does not raise on appeal the dismissal of her claim against HHS
 
 
 [9]
 In light of our decision today, we further hold that the district court did not abuse its discretion by dismissing without prejudice appellant's pendent state claims