**Geoffrey SOLTER, and Diana Solter, Plaintiffs,**

v.

**HEALTH PARTNERS OF PHILADELPHIA, INC., et al., Defendants.**

**No. CIV.A. 02–664.**

United States District Court, E.D. Pennsylvania.

Aug. 6, 2002.

Daniel L. Thistle, Philadelphia, PA, for plaintiffs.

Sharon L. Caffrey, Duane Morris LLP, Philadelphia, PA, John G. Harris, Reed Smith LLP, Wilmington, DE, for defendants.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs Geoffrey and Diana Solter, husband and wife ("plaintiffs"), assert state law claims of negligence, recklessness and breach of contract arising from allegations that plaintiff Diana Solter's

health insurer, defendant Health Partners of Philadelphia, Inc. ("Health Partners"), and its agent, Doral Dental Services of Pennsylvania, Inc. ("Doral Dental"), wrongfully denied medically necessary treatment to Mrs. Solter, causing her injuries. This case was originally filed in the Pennsylvania Court of Common Pleas of Philadelphia County and, thereafter, defendant Health Partners removed the case to this court.[1] Currently before the court is plaintiffs' motion to remand the case to state court. For the following reasons, plaintiffs' motion will be granted and the case will be remanded to the Pennsylvania Court of Common Pleas for Philadelphia County.

## I. BACKGROUND

According to the complaint, in January of 2000, Mr. Solter visited her dentist, Abdul Sami Janjua, D.D.S., due to painful infected teeth. Dr. Janjua took x-rays of the teeth revealing infected abscessed teeth and severe periodontal disease which, with Mrs. Solter's history of heart murmur, placed Mrs. Solter at a high risk of developing bacterial endocarditis and heart valve disease. As a result, Dr. Janjua recommended that Mrs. Solter's upper teeth be extracted and that she get a full upper plate.

Mrs. Solter is a Medicaid recipient who is enrolled in a Medicaid managed health care organization administered by Health Partners. Under the terms of the insurance policy, Health Partners had to approve any treatment, including dental treatment, before it would become obligated to pay for the treatment. Health Partners utilized Doral Dental to review any requested dental care to determine whether or not the care was necessary under the policy. On January 17, 2000, Dr. Janjua requested authorization from Health Part-

ners to perform the necessary treatment on Mrs. Solter. On January 18, 2000, Health Partners, acting through its agent, Doral Dental, denied the requested treatment stating that medical necessity was not shown for complete endentulation of the upper teeth. On January 26, 2000, Dr. Janjua submitted a second request, and on February 1, 2000, Health Partners, via Doral Dental, again denied the treatment stating that the case did not meet the criteria for medical necessity.

Plaintiffs allege that, because of defendants' refusal to approve the teeth extraction, Mrs. Solter was unable to have the teeth extracted and, consequently, developed an infection. As a result, in June, 2001, Mrs. Solter was admitted into Frankford Hospital and diagnosed with subacute bacterial endocarditis due to her dental problems and preexisting heart murmur. She was treated for the endocarditis with medication and discharged from the hospital. Plaintiffs now allege that Mrs. Solter suffers cardiac and renal injuries due to the endocarditis and/or the medication used to treat the endocarditis. Plaintiffs seek compensatory damages on behalf of Diane Solter for medical bills, pain and suffering, lost wages, and loss of earning potential, on behalf of Geoffrey Solter for loss of consortium, and punitive damages on behalf of both.

## II. DISCUSSION

Defendants assert that plaintiffs' breach of contract and negligence claims arise under federal law, pursuant to 28 U.S.C. § 1331, because the issue of whether the care requested by plaintiffs was "medically necessary" is one which arises under the federal Medicaid Act and an implied right of action exists under the Medicaid Act. Plaintiffs respond that removal is improper because their state law claims do not pres-

---

**1.** Defendant Doral Dental had not been served at the time of removal but has since joined in Health Partner's removal to federal court.

ent substantial issues or arise under federal law and that the case should be remanded to state court.

## A. The Provisions of the Medicaid Act.

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals. Although participation in the program is voluntary, participating States must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services...." *Wilder v. Virginia Hospital Assoc.,* 496 U.S. 498, 501, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (citing 42 U.S.C. § 1396). The purpose of the Medicaid Act is to provide "federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

While states have considerable flexibility in determining the scope of their Medicaid coverage, *see* 42 C.F.R. § 430.0; *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), the Medicaid Act requires states to cover several general categories of medical services for categorically needy individuals. 42 U.S.C. § 1396a(a); 42 U.S.C. § 1396d(a)(1)-(5), (17), (21); 42 C.F.R. § 440.210. Participating states are not required, however, to fund all medical services falling under one of the mandatory coverage categories. *See Beal,* 432 U.S. at 441, 97 S.Ct. 2366. Rather, the Act "confers broad discretion on the States to adopt standards for determining the extent of medical assistance" offered in their Medicaid programs. *Id.* at 444, 97 S.Ct. 2366. In addition, federal Medicaid regulations expressly permit participating states to "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). Nonetheless, in order to qualify for federal assistance, a participating state must submit to the Secretary and have approved "a plan for medical assistance." *Wilder,* 496 U.S. at 501, 110 S.Ct. 2510 (citing 42 U.S.C. § 1396a(a)). The medical assistance plan must "include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... are consistent with the objectives [of the Medicaid Act]." 42 U.S.C. § 1396a(a)(17).

In an effort to promote cost-effectiveness and efficiency in the allocation of federal funds under the Medicaid program, Congress implemented a waiver provision, allowing a state to employ managed care organizations ("MCOs") to provide medical assistance to its residents. *See* 42 U.S.C. § 1396n; 42 U.S.C. § 1396u–2 (commonly known as "Section 1915") (hereinafter "guidelines and waiver provisions"). Under the waiver provision, if a state requests and receives a waiver from the Secretary of Health and Human Services pursuant to 42 U.S.C. § 1396n(c), a state may enter into contracts with MCOs to provide health care services to qualifying recipients. 42 U.S.C. § 1396u–2(1). The waiver provision, as well as federal regulations, also permit MCOs to enter into contracts with other health care organizations to provide specialized services, such as dental care. 42 U.S.C. § 1396u–2; 42 C.F.R. § 438.210. In return for the receipt of the waiver, the Medicaid Act provides that the state must provide "medically necessary" services to Medicaid beneficiaries.[2] In the event that an MCO fails to provide medically necessary services under the

---

**2.** In particular, the federal waiver provision specifically provides that the state may utilize a primary care case-management system "if

such restriction does not substantially impair access to such services of adequate quality

waiver provision, the Secretary is permitted to exclude that MCO from participation in the Medicaid program. 42 U.S.C. § 1320a–7(b)(6).

Pursuant to these waiver provisions and federal regulations, the Secretary approved the Commonwealth of Pennsylvania's request to provide a mandatory managed care program, under the name Health Choices Southeast, providing Medicaid benefits to individuals in Southeastern Pennsylvania. Following a competitive bidding process, the Commonwealth contracted with Health Partners to provide medically necessary services for Health Choice Southeast.[3] Pursuant to its contract with the Commonwealth and federal law, Health Partners entered into a contract with Doral Dental to provide "medically necessary" dental services to eligible beneficiaries.[4]

### B. When Claims "Arise Under" Federal Law.

The federal removal statute provides that "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441. The presence of federal question jurisdiction is governed by the well-pleaded complaint rule, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).[5]

When a state cause of action contains as an element a breach of a federal statute as to which Congress has provided an express or implied private right of action, federal question jurisdiction is found. *See Smith v. Industrial Valley Title Insurance Co.*, 957 F.2d 90, 93 (3d Cir.1992). Conversely, "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal

---

where medically necessary." 42 U.S.C. § 1396n(b)(1). Under the regulations, the Secretary may not approve a waiver "unless the State's request assures that the restrictions ... [d]o not substantially impair access to medically necessary services of adequate quality." 42 C.F.R. § 431.55(c)(2)(ii), (d). In permitting an MCO to furnish medical services, the "State must ensure that each MCO ... [m]ake services available 24 hours a day, 7 days a week, when medically necessary." 42 C.F.R. § 438.206.

3. Under the Medicaid contract between Health Partners and the Commonwealth, "medically necessary" is defined as follows:

[a] service or benefit is medically necessary if it is compensable under the Medical Assistance Program and if it meets any one of the following standards:

(1) The service or benefit will, or is reasonably expected to, prevent the onset of an illness, condition or disability.

(2) The service or benefit will, or is reasonably expected to, reduce or ameliorate the physical, mental or developmental effects of an illness, condition, injury or disability.

(3) The service or benefit will assist the member to achieve or maintain maximum functional capacity in performing daily activities, taking into account both the functional capacity of the member and those functional capacities that are appropriate for members of the same age.

4. The definition of "medically necessary" in the contract between Health Partners and Doral Dental is substantially similar to the definition found in the contract between Health Partners and the Commonwealth. *See* note 3, *supra*.

5. Plaintiffs' complaint refers to federal law in one instance. *See* Compl. ¶ 12 ("The Medicaid guidelines state that teeth that are not causing pain or infection should not be removed.").

cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 817, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (quoting 28 U.S.C. § 1331)).

■ In this case, the plaintiffs assert that the defendants' failure to approve the request for teeth extraction denied plaintiff "medically necessary" services in violation of the Medicaid guidelines and waiver provisions issued by the Secretary of the Department of Health and Human Services to the states constituted negligence, breach of contract and breach of fiduciary duty. The issue in this case is whether the Medicaid Act, the federal statute implicated in this case, provides a private right of action to enforce the guidelines and waiver provisions. If it does, removal was proper. If it does not, the case must be remanded for lack of federal question jurisdiction.

### C. Do Plaintiffs' Claims "Arise Under" Federal Law?

The parties agree that the Medicaid Act does not provide for an express private right of action for its enforcement. The issue here is whether it provides for an implied private right of action.

In *Cort v. Ash,* the Supreme Court established a four prong test to determine whether a federal statute provides an implied private right of action:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," ... –that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? .... Third, is it consistent with the underlying purposes of the leg-

islative scheme to imply such a remedy for the plaintiff? .... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations omitted). The Court has made clear that the second factor is the most important in determining whether an implied right of action exists. *See Suter v. Artist M.,* 503 U.S. 347, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) ("[T]he most important inquiry here ... is whether Congress intended to create the private remedy sought by the plaintiffs."). In making this determination, courts must examine the statute's language, structure, and legislative history. *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91–94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).[6]

As to the first *Cort* factor, there is little question that plaintiff Diana Solter, a Medicaid recipient, is an intended beneficiary of the guidelines and waiver provisions of the Medicaid Act. The purposes of the Medicaid Act's guidelines and waiver provisions appear to be cost-efficiency balanced against ensuring that Medicaid beneficiaries receive "medically necessary" services. *See* 42 U.S.C. § 1396n(b)(1) (permitting MCOs only if there is no substantial impairment of access to medically necessary services); 42 C.F.R. § 438.210(a)(3) (same).

As to the second *Cort* factor, congressional intent, there is no indication in the legislative history of the Medicaid Act that Congress intended to create a private remedy for a private care patient to bring a private action for money damages under

---

6. No court has considered whether the guidelines and waiver provisions of the Medicaid Act creates an implied, right of action to ensure that an MCO provided "medically necessary" treatment. Thus, this specific issue appears to be one of first impression.

the statute. *Stewart v. Bernstein,* 769 F.2d 1088, 1093 n. 6 (5th Cir.1985). In *Stewart,* the Fifth Circuit held that there is no implied right of action under the Medicaid Act for nursing home residents to sue the Texas Department of Health for involuntary discharges from nursing homes because there is no evidence of congressional intent to create a judicially enforceable cause of action between Medicaid residents and their private nursing homes. *Id.* at 1092 ("Appellant has pointed to nothing in either the statute or the legislative history suggesting that Congress intended to create such a remedy.").[7] The court further explained: "Absent any direct evidence of this intent, appellant has no federal cause of action against the private appellees.... Such remedies are for Congress to state or to clearly imply, not for us to infer." *Id.* at 1093. The court also observed that the statute was not bereft of enforcement provisions, i.e., a recipient whose claim for assistance is denied or unreasonably delayed has a right to a hearing before the state Medicaid agency. *Id.* (citing 42 U.S.C. § 1396a(a)(3)). Consequently, "[t]he Act contemplates certain kinds of judicial enforcement to secure certain kinds of individual rights; it does not envision suit by a recipient against her private provider of services." *Id.* Lastly, the court explained that private providers of services "derive their obligations from state law and through their contractual agreements with the states, not from [the Medicaid Act]." *Id.* at 1094 (citing *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 787 & n. 20, 100 S.Ct. 2467, 65 L.Ed.2d 506).

Similarly, relying in part on *Stewart,* Judge Reed from the Eastern District of Pennsylvania held, in the nursing home context, that "there is no indication that Congress intended, either explicitly or implicitly, for a private care patient to bring a private action for money damages under the [Medicaid Act]." *Chalfin v. Beverly Enterprises,* 741 F.Supp. 1162, 1169 (E.D.Pa.1989). *See also Illinois Health Care v. Suter,* 719 F.Supp. 1419, 1425 (N.D.Ill.1989) (finding no implied right of action under Medicaid Act for claim against state and Secretary seeking reimbursements, in part, due to the "total absence of any indication, either in the statutory language or in the legislative history, of any congressional intent to create such a right."); *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689, 696 (N.D.Ohio 1977) ("the Medicaid Act and the regulations contemplate administrative rather than judicial enforcement of the legislation's requirements.").

Defendants maintain that the language and structure of the waiver provisions of the Medicaid Act evince a congressional intent to provide an implied private right of action. They argue that it is clear that the Medicaid Act does not contain a vehicle for the individual beneficiaries to enforce their rights to "medically necessary" treatment in a federal forum in the event that an MCO and/or state violates those rights. Consequently, according to defendants, this is precisely the type of situation, *i.e.,* where there is a right but no federal remedy, where Congress intended to create an implied right of action. For support, defendants rely on *Roberson v. Wood,* 464 F.Supp. 983 (E.D.Ill.1979), where nursing home residents sued the nursing home alleging that the home's patient transfer policy violated Medicaid provisions with respect to the transfer or discharge of patients at the home. *Id.* at 984. There, the court found that an implied

---

7. With respect to legislative history, the appellant conceded, as defendants do here, that there is no explicit intent in the legislative history to create an implied cause of action. *Id.* at 1093 n. 6.

private right of action existed under these Medicaid transfer provisions. *Id.* at 989. In addressing the second *Cort* factor, the court found that the available sanction at issue in that case, withholding federal funding from a non-compliant nursing home, was an insufficient remedy because the plaintiffs were left without any relief from the nursing home's failure to comply with federal standards regarding transfer of patients from the facility. *Id.* at 988. "If the law was created for the benefit of these plaintiffs, and they now face possible harm, the statute must have implicitly intended them to enforce their rights because it appears no one else is empowered to do so." *Id.*

■ This reasoning is unpersuasive.[8] One, it does not necessarily follow that where a federal statute affords substantive rights, but does not explicitly provide a remedy to enforce those rights, Congress necessarily intended that such a remedy should be available. "While a silent legislative history does not necessarily preclude the existence of an implied remedy, neither does congressional silence create a presumption in favor of judicial remedy." *Stewart*, 769 F.2d at 1093 n. 6 (citations omitted). Two, the Medicaid Act actually mandates that the participating states create a voluntary administrative process whereby beneficiaries may seek redress for an allegedly wrongful withholding of benefits. *See* 42 C.F.R. § 438.228 (man-

dating that each participating state ensure that all Medicaid managed care organizations have a grievance system in effect). This mandate is evidence that Congress anticipated that the states would provide the remedy for vindication of the guidelines and waiver provisions of the Medicaid Act. In other words, there is a remedy available to plaintiffs for the wrong they allege in a state-created forum, rather than in federal court.

Defendants also rely on *Oregon Association of Homes for the Aging, Inc. v. Oregon*, 884 F.Supp. 382 (D.Or.1994). There, a nursing home facility sued the state of Oregon for reimbursement under the Boren Amendment to the Medicaid Act which requires states to provide reimbursements to hospitals based on rates a state finds reasonable and adequate. *Id.* at 384. The district court found an implied private right of action, in part, because the language of the statute was "cast in mandatory rather than precatory terms." *Id.* at 386.[9] Defendants argue that because the waiver provisions are also cast in mandatory terms, a private cause of action should similarly be implied. Although the court's interpretation is plausible, given the presumption against finding federal jurisdiction,[10] the circumstance that the statute is cast in mandatory terms, alone, is not sufficient to evince a congressional intent to provide a federal remedy.

---

**8.** Additionally, *Roberson* is distinguishable. Here, a contract exists between the state and the MCO requiring the latter to provide medically necessary services. Plaintiff is a third-party beneficiary to this contract. Thus, plaintiff can enforce her rights to "medically necessary" care with a breach of contract claim against the MCO, the exact path plaintiffs have taken in this case.

**9.** *But cf. Illinois Health Care Assoc.*, 719 F.Supp. 1419 (N.D.Ill.1989) (no implied private cause of action under the Boren Amendment).

**10.** *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.").

The third *Cort* factor asks whether the remedy is consistent with one of the underlying purposes of the legislative scheme. The Medicaid program embodies a partnership between the federal government and the states, which involves a combination of federal funding and state administration. *See* pp. 535–36, *supra*. "It is clear from the legislative history that, rather than focusing on the individual patient, the legislation is primarily directed at the role of participating *states* in providing medical care with the assistance of federal funds." *Chalfin*, 741 F.Supp. at 1169 (emphasis in original). "The Medicaid program is not intended to meet all the medical needs of recipients. Rather, its goal is to provide medical assistance 'as far as practicable under the conditions of [each] state.'" *Id.* (quoting *Bumpus v. Clark*, 681 F.2d 679, 684 (9th Cir.1982) (quoting 42 U.S.C. § 1396)). Implying a federal cause of action which would place enforcement of the Medicaid Act in the federal courts, thus, would significantly distort the congressional scheme of placing administration of the program under the Medicaid Act in the hands of the states. *Fuzie*, 461 F.Supp. at 697.

As to the fourth factor, whether the cause of action is traditionally relegated to state law in an area basically the concern of the states, this factor also compels against finding an implied private right of action. The causes of action alleged here, negligence, breach of contract and breach of fiduciary duty are areas of the law which have been historically assigned to state forums for resolution. To the extent that resolution of these state causes of action would implicate federal issues, the state courts are fully competent to analyze and determine any federal issues involved. *See Powers v. Southland Corp.*, 4 F.3d 223, 235 (3d Cir.1993) ("Just as federal courts consider questions of state law in diversity actions, state courts are routinely called on to consider questions of federal law in a wide range of contexts.").

The court finds that an analysis of the *Cort* factors in this case compels against finding an implied right of action under the guidelines and waiver provisions of the Medicaid Act.

## III. CONCLUSION

Based on the foregoing reasoning, the court holds that plaintiffs' state law claims do not arise under federal law pursuant to 28 U.S.C. § 1331, and that this court is without subject matter jurisdiction to hear this matter. Therefore, plaintiffs' motion to remand will be granted and the case will be remanded to the Pennsylvania Court of Common Pleas for Philadelphia County.

An appropriate order follows.

### ORDER

**AND NOW**, this 6th day of **August, 2002,** upon consideration of plaintiffs' Petition for Suggestion of Remand (doc. no. 3), which the court will construe as a Motion to Remand and pursuant to the court's memorandum dated August 6, 2002, it is hereby **ORDERED** that:

1. The motion is **GRANTED** and the case is **REMANDED** to the Pennsylvania Court of Common Pleas of Philadelphia County;[1]

2. It is **FURTHER ORDERED** that defendant Health Partners' Motion to Dismiss Pursuant to Rule 12(b)(6), or in the

---

1. To the extent that the court relied upon plaintiffs' reply brief in support of plaintiffs' motion to remand and defendants' response in opposition to plaintiff's reply brief, defendants' Motion to Strike Plaintiffs' Reply Brief, or in the Alternative, for Leave to File a Response in Opposition to Plaintiffs' Reply Brief (doc. no. 14) is **GRANTED IN PART and DENIED IN PART**.

Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e) (doc. no. 2) and defendant Doral Dental's Motion to Dismiss Pursuant to Rule 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e) (doc. no. 11) are **DENIED WITHOUT PREJUDICE.**

**AND IT IS SO ORDERED.**