588 S.E.2d 588

June P. ANDRADE, Respondent,

v.

Jimmy JOHNSON, Sea Island Air, Inc., and South Carolina Electric & Gas Co., Inc., Defendants,

of whom SOUTH CAROLINA ELECTRIC & GAS CO., INC. is Petitioner.

No. 25738.

Supreme Court of South Carolina.

Heard March 4, 2003.
Decided Oct. 27, 2003.

A. Parker Barnes, Jr., and David S. Black, both of A. Parker Barnes, Jr. & Associates, of Beaufort; Charles E. Carpenter, Jr., and S. Elizabeth Brosnan, both of Richardson, Plowden, Carpenter & Robinson, PA, of Columbia; for petitioner.

J. Brent Kiker, Anne S. Douds and Scott M. Merrifield, all of Kiker & Douds, PA, of Beaufort, for respondent.

Justice MOORE.

We granted certiorari to determine whether the Court of Appeals erred by reversing the trial court's decision granting South Carolina Electric & Gas (SCE&G) a directed verdict on respondent's negligence claim. *Andrade v. Johnson*, 345 S.C. 216, 546 S.E.2d 665 (Ct.App.2001). We reverse.

## FACTS

Respondent contacted Sea Island Air for an estimate on replacing her heating, ventilation, and air conditioning (HVAC) system in her townhouse. She called Sea Island because of the large SCE&G Quality Dealer insignia in its phone book advertisement.

Sea Island's president, Jimmy Johnson, visited respondent and emphasized his SCE&G Quality Dealer designation. He

also elaborated on the virtues of the Quality Dealer program and SCE&G's financing program that was available only to purchasers who used a Quality Dealer for installing an HVAC system.

Following the meeting, respondent obtained a brochure that explained the Great Appliance Trade–Up Program. The brochure explained that to qualify for a special rebate or credit toward the monthly electric bill, a customer must be an SCE&G electric customer on certain rates and have a high-efficiency unit installed by an SCE&G Quality Dealer. The brochure further explained that SCE&G-certified Quality Dealers are the only contractors whose installation work qualifies for rebates in their Great Appliance Trade–Up Program, as well as for special energy rates. Respondent testified the brochure confirmed Johnson's statements to her.

Respondent agreed to have two new HVAC systems installed in her home. After several delays in the installation, a crew finally completed the work. Respondent immediately observed difficulties with the operation of the system and informed Johnson of the deficiencies. However, she signed the financing forms authorizing SCE&G to pay Sea Island for the work. The financing agreement included the statement: "Customer further acknowledges that SCE&G has no warranty liability in connection with the Property or its installation."

Because the HVAC system was not working properly, respondent was forced to buy electric heaters to warm her house. At respondent's request, the Beaufort codes department inspected the installation and listed approximately fifteen code violations committed by Sea Island.[1] Prior to completing a full inspection of the HVAC systems, respondent had to remove the floor of her third floor room to allow a proper inspection.

Respondent also arranged to have Jeff Kleckley, the head of the local SCE&G Quality Dealer program, inspect the installa-

---

1. Twenty-six other codes violations were discovered during the inspection. Most of these violations concerned respondent's attempt to have her attic turned into a habitable third floor room. Respondent had not obtained a permit for any of the third floor work and this work was partially completed when Sea Island arrived to install the HVAC systems.

tion, even though SCE&G indicated it normally did not do inspections. SCE&G suggested to respondent that she pay Sea Island $500 to bypass the third floor so that she could get heat into the second floor bedrooms. This was suggested as a temporary fix until respondent installed insulation in the third floor and replaced the floor of the third floor room. Respondent did not take this advice because she received the Codes inspection report mentioned previously and did not want to put more money into the faulty system.[2]

Respondent met with the general manager of SCE&G's Beaufort office and asked him to intervene with Johnson and Sea Island to remedy the problems. The general manager stated, although it was not something he normally dealt with, he would speak with Sea Island to see if Sea Island could get her system in working order. Finally, respondent was forced to hire another contractor to remove and replace the systems installed by Sea Island.

Prior to trial on her claims, respondent settled with Johnson and executed a covenant not to sue in his favor. The covenant expressly reserved any and all claims respondent had against SCE&G.

The trial court granted summary judgment to SCE&G on respondent's Unfair and Deceptive Trade Practices Act (UTPA) claim and on her claims based on SCE&G's vicarious liability. The court directed a verdict in SCE&G's favor on respondent's remaining causes of action alleging negligence and misrepresentation.

The Court of Appeals affirmed in part and reversed in part. The court affirmed the trial court's decision granting summary judgment to SCE&G on all claims based upon SCE&G's vicarious liability on the basis the covenant not to sue released both Johnson and SCE&G. The court reversed the trial court's decision granting SCE&G's summary judgment motion on the basis SCE&G was exempt from the UTPA. Finally, the Court

---

**2.** Subsequently, after receiving a letter from respondent, Kleckley, on behalf of SCE&G, sent her a letter reiterating that respondent needed to repair the third floor subfloor that had been removed, that adequate insulation should be installed in the third floor, and that the third floor should be properly ventilated. He further wrote that SCE&G could not guarantee comfort since there were a number of factors that impacted overall comfort.

of Appeals reversed the trial court's decision granting SCE&G a directed verdict on respondent's negligence claim. On this issue, the court found the evidence raised an inference that SCE&G owed a duty of care to respondent to ensure the proper installation of the HVAC systems. The court found the Quality Dealer Agreement provided evidence of a contractual duty undertaken by SCE&G to oversee the proper installation of HVAC systems and to address customer complaints regarding improper installation. While all of the Court of Appeals' findings were appealed, we granted certiorari solely on the issue concerning respondent's negligence claim.

## ISSUE

Did the Court of Appeals err by reversing the trial court's decision granting SCE&G's directed verdict motion on respondent's negligence claim?

## DISCUSSION

Respondent alleged SCE&G was negligent for failing to properly supervise its Quality Dealer program, failing to properly train, qualify, and investigate its quality dealers, failing to act reasonably in responding to customer complaints, and failing to exercise reasonable care in the certification of its quality dealers. Respondent argues SCE&G's implementation, operation, and conduct of its Quality Dealer program gave rise to a duty of care.

Sea Island was an SCE&G certified quality dealer. The guidelines of the Quality Dealer Program state the program is

designed to encourage proper installation of high efficiency heating and cooling systems. The program incorporates high standards of system design, installation, and maintenance.... Contractors who elect to participate and install new systems ... must meet the Quality Dealer Program standards.

The Quality Dealer Program Agreement provided that Sea Island must adhere to all dealer requirements, installation requirements, mediation procedures in responding to customer complaints, and to SCE&G's inspection policy. SCE&G, in turn, agreed to assist in developing prospective customers, provide promotional materials, provide reasonable assistance

and opportunities for training, and promote Quality HVAC installations to their customers.

To become a Quality Dealer, the dealer must agree to establish certain customer service practices. Further, the dealer must annually participate in a SCE&G orientation covering the program guidelines and basic design and installation requirements. Under the Agreement, the dealer was required to meet and adhere to a detailed list of installation requirements. The installation requirements stated that the dealer must "select and install systems and accessory equipment in accordance with all local, state and national codes."

The Agreement also outlines mediation procedures for when SCE&G receives a complaint from a customer dissatisfied with an installation by a Quality Dealer. The mediation procedures state that if the complaint is not resolved when the customer contacts the dealer, the SCE&G representative will notify the appropriate distributor and meet with the dealer and customer to inspect the system and investigate the complaint. The mediation procedures further provide:

> The [SCE&G] representative will inspect the system for program compliance and capacity measurements. The [SCE&G] representative will work with the dealer to find a solution to the complaint. If the problem can not, or will not, be resolved by the dealer, the manufacturer's and/or distributor's technical representative will be contacted to inspect the system.

If a dealer refuses to correct a justifiable customer complaint in a timely manner, the dealer will be suspended from the program for a minimum of one year.

Under the Agreement, SCE&G reserved the right to inspect or verify all installations for which a dealer or customer receives a rebate or special rate consideration. Inspections could be random or at a customer's request. The Agreement notes these inspections are used "to determine compliance with [their programs.]"

SCE&G argues the Court of Appeals erred by reversing the trial court's decision granting their directed verdict motion on respondent's claim of negligence.

When reviewing the denial of a motion for directed verdict, we must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 542 S.E.2d 728 (2001). If the evidence as a whole is susceptible of only one reasonable inference, no jury issue is created and a directed verdict motion is properly granted. *Id.*

In a negligence action, a plaintiff must show the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages. *Steinke v. South Carolina Dep't of Labor, Licensing and Reg.*, 336 S.C. 373, 520 S.E.2d 142 (1999).

A tort-feasor may be subjected to tort liability for injury to a third party arising out of the tort-feasor's contractual relationship with another, despite the absence of privity between the tort-feasor and the third party. *Barker v. Sauls*, 289 S.C. 121, 345 S.E.2d 244 (1986) (citation omitted). The tort-feasor's liability exists independently of contract, and rests upon the tort-feasor's duty to exercise due care. *Id.*

The key inquiry is what duty, if any, is owed by the tort-feasor to the third party. *Id.* It is essential to liability for negligence that the parties have some relationship recognized by law to support the duty owed by the tort-feasor. *Id.* This duty may be derived from the tort-feasor's contractual relationship with another. *Id.*

SCE&G did not owe a duty to respondent to ensure that its Quality Dealer properly installed her HVAC system. From the language of the Agreement, it is clear SCE&G did not owe such a duty to respondent, an SCE&G customer.

While an SCE&G customer receives some benefit from the agreement through the ability to participate in the Great Appliance Trade–Up Program and receive special electric rates, financing for the installation of a Quality HVAC system, and ensuring the HVAC system that is installed meets the Quality Dealer Program requirements, this does not thereby mean SCE&G has a duty to ensure a customer receives good service from one of its quality dealers. Further, the language

in the SCE&G financing agreement signed by respondent evidences SCE&G did not have a duty to ensure the proper installation of the HVAC system. The agreement states: "Customer further acknowledges that SCE&G has no warranty liability in connection with the Property or its installation."

Therefore, we conclude the Court of Appeals erroneously reversed the trial court's decision directing a verdict in SCE&G's favor because SCE&G did not owe a duty to respondent to ensure Sea Island Air performed satisfactory work when installing respondent's HVAC system.

**REVERSED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.