623 S.E.2d 107

Phyllis J. WOGAN, individually and as Personal Representative of the Estate of James J. Wogan, Appellant,

v.

Kenneth C. KUNZE, M.D.; Hilton Head Gastroenterology, P.A.; Thomas P. Rzecycki, M.D.; Hilton Head General and Laparoscopic Surgery, P.A.; Gary W. Thomas, M.D.; and Gary W. Thomas M.D., P.A., Respondents.

No. 4026.

Court of Appeals of South Carolina.

Heard Sept. 14, 2005.

Decided Sept. 26, 2005.

Rehearing Denied Dec. 15, 2005.

586

I. McDuffie Stone, III, of Bluffton and Timothy M. Wogan, of Hilton Head Island, for Appellant.

Elliott T. Halio, and Andrew S. Halio, both of Charleston and James S. Gibson, Jr., of Beaufort, for Respondents.

ANDERSON, J.:

Phyllis J. Wogan, individually and as Personal Representative of the Estate of James J. Wogan, initiated this action for negligence, loss of consortium, breach of third-party beneficiary contract, breach of fiduciary duty, and violations of the

South Carolina Unfair Trade Practices Act. The trial court granted summary judgment to Kenneth C. Kunze, M.D.; Hilton Head Gastroenterology, P.A.; Gary W. Thomas, M.D.; and Gary W. Thomas M.D., P.A.[1] (collectively "the Doctors") on the claims for unfair trade practices, breach of fiduciary duty, breach of a third-party beneficiary contract, and a portion of the negligence cause of action based upon their alleged failures to file Medicare claims. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

Dr. Thomas administered chemotherapy to treat Mr. Wogan for rectal cancer. By the end of the chemotherapy, Mr. Wogan had developed a severe case of high output/high frequency diarrhea. The diarrhea caused malnutrition and dehydration, and consequently led to several hospitalizations. Mr. Wogan was referred to Dr. Kunze for treatment of the gastrointestinal problem. Dr. Kunze performed a colostomy in order to stop the diarrhea. Unfortunately, the procedure did not remedy the problem. The ordering and performance of this procedure makes up a portion of the medical malpractice action not subject to this appeal.

Dr. Kunze placed Mr. Wogan on the drug Sandostatin SC to alleviate his diarrheic condition. After determining the drug was effective at controlling the diarrhea, Dr. Kunze informed the Wogans he would switch the prescription to Sandostatin LAR. Sandostatin SC was inserted subcutaneously three times a day and was not covered by Medicare. Sandostatin LAR is a long-acting version that would need to be injected once a month. Ms. Wogan alleged Medicare would cover the drug if the diarrhea resulted from Mr. Wogan's chemotherapy.

According to Ms. Wogan, Dr. Kunze originally indicated he would preorder the Sandostatin LAR, administer it in his office, and submit the claim to Medicare. Later, Dr. Kunze notified Ms. Wogan he would not preorder the drug. Dr. Kunze's nurse suggested that Ms. Wogan consult with Dr. Thomas to see if he would prescribe and administer the medication, but Dr. Thomas would not, and represented he did not believe the diarrhea resulted from the chemotherapy. Eventually, Dr. Kunze agreed to administer the Sandostatin

---

1. The two remaining Respondents are not involved in this appeal.

LAR, but required Ms. Wogan to purchase the monthly doses from a pharmacy. He refused to file a Medicare claim for the drug. The Wogans purchased Sandostatin LAR at a cost of $2000 per month for several months, and continued to insist either Dr. Kunze or Dr. Thomas assist with a Medicare claim.

Mr. Wogan's debilitating diarrhea persisted and resulted in several hospitalizations. During one hospital stay, Dr. Thomas ordered Mr. Wogan to continue taking all prescribed medications, including the Sandostatin, but he did not actually write a prescription for the Sandostatin. Mr. Wogan died in October 2001.

Originally, Ms. Wogan filed this action against Kenneth C. Kunze, M.D.; Hilton Head Gastroenterology, P.A.; Thomas P. Rzecycki, M.D.; Hilton Head General and Laparoscopic Surgery, P.A. A year and a half later, Gary W. Thomas, M.D. and Gary W. Thomas M.D., P.A., were added as parties. The complaint asserts claims for (1) negligence based on both medical malpractice from the surgery and failures by the Doctors to file claims or help Ms. Wogan file a claim with Medicare for the Sandostatin LAR; (2) breaches of the Doctors' contracts with Medicare under which it was alleged Mr. Wogan was a third-party beneficiary; (3) violations of the South Carolina Unfair Trade Practices Act; (4) breaches of fiduciary duty by the Doctors in failing to file the Medicare claim; and (5) loss of consortium.

The Doctors filed motions for summary judgment on all but the medical malpractice and loss of consortium claims. In their memoranda submitted to the court, they contend there is no private right of action provided in the Medicare statute, and Ms. Wogan's complaint for negligence regarding their failures to file Medicare claims was merely a claim for violation of the Medicare Act. Additionally, the Doctors maintained the action for unfair trade practices must fail because the medical field is a regulated industry. Finally, they argued there was no fiduciary duty to file the claim. Dr. Thomas contended he could not be found negligent because he never actually prescribed the medicine; thus, it would have been fraud had he submitted a claim to Medicare.

The trial court agreed with the Doctors and granted summary judgment as to the negligence action based on the

failure to file a Medicare claim. The court found there is no private right of action, either expressed or implied, in the Medicare Act. Furthermore, the court ruled Ms. Wogan could not use a state law claim to assert an action based on the Doctors' failure to follow a federal act when the act does not provide for a private right of action.

According to the court, Ms. Wogan could not maintain her suit for unfair trade practices because as an individual she did not demonstrate an ascertainable loss, and the statute prohibits her from bringing a claim in a representative capacity. The court further rejected the breach of fiduciary duty claim because the only breaches alleged were for medical malpractice and failure to file a claim—both of which Ms. Wogan alleged in her negligence cause of action. Finally, the court concluded the allegations against Dr. Thomas failed, as he never prescribed the medicine, and therefore, had no duty to file a Medicare claim. Ms. Wogan's motion for reconsideration was denied.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Pittman v. Grand Strand Entm't, Inc.*, 363 S.C. 531, 611 S.E.2d 922 (2005); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 603 S.E.2d 629 (Ct.App.2004). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud*, 360 S.C. 615, 602 S.E.2d 747 (2004); *Rife v. Hitachi Constr. Mach. Co., Ltd.*, 363 S.C. 209, 609 S.E.2d 565 (Ct.App.2005). If triable issues exist, those issues must go to the jury. *Mulherin–Howell v. Cobb*, 362 S.C. 588, 608 S.E.2d 587 (Ct.App.2005).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 611 S.E.2d 485 (2005); *BPS, Inc. v. Worthy*, 362 S.C. 319, 608 S.E.2d 155 (Ct.App.2005). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu*, 362 S.C. 146, 607 S.E.2d 63 (2004); *see also Schmidt v. Courtney*, 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003), *cert. denied* (Apr. 7, 2005) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Gadson v. Hembree*, 364 S.C. 316, 613 S.E.2d 533 (2005); *Montgomery v. CSX Transp., Inc.*, 362 S.C. 529, 608 S.E.2d 440 (Ct.App.2004). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Nelson v. Charleston County Parks & Recreation Comm'n*, 362 S.C. 1, 605 S.E.2d 744 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004).

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Rife*, 363 S.C. at 214, 609 S.E.2d at 568.

The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder.

*Dawkins v. Fields,* 354 S.C. 58, 580 S.E.2d 433 (2003); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004).

## LAW/ANALYSIS

Ms. Wogan contends the trial court erred in granting summary judgment to the Doctors on four of her claims. She maintains her negligence action is not based upon the Medicare Act, but upon state law claims. Additionally, she contends she should not be barred from bringing the causes of action for breach of a third-party beneficiary contract, unfair trade practices, and breach of fiduciary duty. We disagree.

### I. Medicare Act

**A. Background**

■ First, we address the issue of whether there is an express or implied right of action under the Medicare Act, 42 U.S.C.A. § 1395. We find there is no right of action, either express or implied, relating to the failure of a physician to file a claim under 42 U.S.C.A. § 1395w–4(g)(4)(A).

The portion of the Medicare Act requiring submission of claims by physicians states:

(4) Physician submission of claims

(A) In general

For services furnished on or after September 1, 1990, within 1 year after the date of providing a service for which payment is made under this part on a reasonable charge or fee schedule basis, a physician, supplier, or other person (or an employer or facility in the cases described in section 1395u(b)(6)(A) of this title)—

(i) shall complete and submit a claim for such service on a standard claim form specified by the Secretary to the carrier on behalf of a beneficiary, and

(ii) may not impose any charge relating to completing and submitting such a form.

(B) Penalty

(i) With respect to an assigned claim wherever a physician, provider, supplier or other person (or an employer or facility in the cases described in section 1395u(b)(6)(A) of this title) fails to submit such a claim as required in subparagraph (A), the Secretary shall reduce by 10 percent the amount that would otherwise be paid for such claim under this part.

(ii) If a physician, supplier, or other person (or an employer or facility in the cases described in section 1395u(b)(6)(A) of this title) fails to submit a claim required to be submitted under subparagraph (A) or imposes a charge in violation of such subparagraph, the Secretary shall apply the sanction with respect to such a violation in the same manner as a sanction may be imposed under section 1395u(p)(3) of this title for a violation of section 1395u(p)(1) of this title.

42 U.S.C.A. § 1395w–4(g)(4).

Ms. Wogan concedes there is no *express* provision in the Act allowing her to sue the physicians for failing to file a claim. The Act provides for penalties and sanctions, but no private cause of action. Therefore, we must determine whether an *implied* right of action for failing to file a claim exists.

## B. Other Jurisdictions

Although several federal courts have confronted the question whether the Medicare Act gives rise to an implied right of action, neither the state nor the federal courts in South Carolina have decided the issue. One case from a South Carolina Federal District Court stated the issue without answering it: "... this court expresses no opinion on the question of whether a private cause of action in favor of the Medicare recipients themselves could be implied under U.S.C. s 1395a." *Home Health Servs., Inc. v. Currie,* 531 F.Supp. 476 (D.S.C.1982), *aff'd* 706 F.2d 497 (4th Cir.1983). The *Currie* case, however, is of no help as it lucidly expresses no opinion whether or not a private cause of action may be implied under the Medicare Act.

A federal court in Florida opined:

Congress has not, statutorily, provided any private federal right of action or remedy under the Medicare or Medicaid Acts. *See* 42 U.S.C. §§ 1395, 1396. Even if the Medicare and Medicaid Acts created some substantive rights, the statutes contain "numerous provisions short of judicial enforcement that are designed to redress recipients' grievances." *See Stewart v. Bernstein,* 769 F.2d 1088, 1093 (5th Cir.1985). Congress did not intend to provide a private right of action under the Medicare or Medicaid Acts[.]

*Estate of Ayers ex el. Strugnell v. Beaver,* 48 F.Supp.2d 1335, 1339–40 (M.D.Fla.1999).

In *Brogdon ex rel. Cline v. National Healthcare Corp.,* 103 F.Supp.2d 1322 (N.D.Ga.2000), the court was presented with the question "whether Congress intended to authorize nursing home residents to file suit against nursing homes to enforce the standards required for participation in the Medicare and Medicaid programs." *Id.* at 1330. The court concluded "Congress did not intend to create such a remedy"[:]

The great majority of courts have determined that the Medicare and Medicaid Acts do not authorize private causes of action against nursing homes. *See Wheat v. Mass,* 994 F.2d 273, 276 (5th Cir.1993); *Stewart v. Bernstein,* 769 F.2d 1088, 1092–93 (5th Cir.1985); *Estate of Ayres v. Beaver,* 48 F.Supp.2d 1335, 1339–40 (M.D.Fla.1999); *Nichols v. St. Luke Ctr.,* 800 F.Supp. 1564, 1568 (S.D.Ohio 1992); *Chalfin v. Beverly Enters., Inc.,* 741 F.Supp. 1162, 1170–71 (E.D.Pa. 1989); *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689, 697 (N.D.Ohio 1977). *But see Roberson v. Wood,* 464 F.Supp. 983, 988–89 (E.D.Ill.1979). These courts found nothing in the text or legislative history of the Medicaid or Medicare Acts before the OBRA '87 amendments to suggest that Congress intended to create a private cause of action.

*Brogdon,* 103 F.Supp.2d at 1331–32.

Additionally, courts have ruled the *Medicaid* Act does not give rise to an implied right of action. In *Solter v. Health Partners of Philadelphia, Inc.,* 215 F.Supp.2d 533 (E.D.Pa. 2002), after reciting the *Cort* test, the court noted that the Supreme Court "has made clear that the second factor is the most important in determining whether an implied right of action exists. *See Suter v. Artist M.,* 503 U.S. 347, 363, 112

S.Ct. 1360, 118 L.Ed.2d 1(1992) ('[T]he most important inquiry here ... is whether Congress intended to create the private remedy sought by the plaintiffs.')." *Id.* at 538. "In making this determination, courts must examine the statute's language, structure, and legislative history. *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91–94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)." *Id.* (footnote omitted). As to congressional intent, the *Solter* court found "there is no indication in the legislative history of the Medicaid Act that Congress intended to create a private remedy for a private care patient to bring a private action for money damages under the statute. *Stewart v. Bernstein,* 769 F.2d 1088, 1093 n. 6 (5th Cir.1985)." Moreover,

the Medicaid Act actually mandates that the participating states create a voluntary administrative process whereby beneficiaries may seek redress for an allegedly wrongful withholding of benefits.... This mandate is evidence that Congress anticipated that the states would provide the remedy for vindication of the guidelines and waiver provisions of the Medicaid Act. In other words, there is a remedy available to plaintiffs for the wrong they allege in a state-created forum, rather than in federal court.

*Solter,* 215 F.Supp.2d at 539.

Because there is no South Carolina authority resolving this question, and only minimal guidance from other jurisdictions, we turn to the United States Supreme Court's prescriptions and doctrinal edifications as to when a private right of action may be implied from a federal statute.

## C. Implied Right of Action

During the early era of American jurisprudence, courts addressed the propriety of implying a private cause of action from a federal statute with the maxim, "For every wrong there is a remedy." *See* Susan J. Stabile, *The Role of Congressional Intent in Determining the Existence of Implied Private Rights of Action,* 71 Notre Dame L.Rev. 861, 864 (1996) ("The early view of the courts on the question of when it is appropriate to imply a private cause of action from a federal statute that itself does not provide for such an action was that an individual is entitled to an adequate remedy for

any legal wrong, whether common law wrong or statutory wrong.") "Since there was a remedy for all wrongs, if Congress did not provide for that remedy, the courts should and did." *Id.* However, towards the end of the nineteenth century, the paradigmatic tide began to shift as congressional intent increasingly began to inform courts' implied right of action analyses. *See id.,* citing *Johnson v. S. Pac. Co.,* 196 U.S. 1, 25 S.Ct. 158, 49 L.Ed. 363 (1904). With the New Deal and the efflux of federal legislation that followed came a "more restrictive notion of when to imply private causes of action from federal statutes." *Id.* at 865.

For example, in 1916, the Supreme Court, in *Texas & Pacific Railway v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916), had implied a private cause of action under the "safety appliance acts." The Court observed that "[n]one of the acts, indeed, contains express language conferring a right of action for the death or injury of an employee; but the safety of employees and travelers is their principal object, and the right of private action by an injured employee, even without the employers' liability act, has never been doubted." 241 U.S. at 39, 36 S.Ct. 482 (citations omitted). Continuing, the Court explained:

> A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Comyn's Dig. title, 'Action upon Statute' (F), in these words: 'So, in every case, where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.'

*Id.* (citations omitted).

By 1934, the tenor of the Court's voice had changed slightly. In *Moore v. Chesapeake & Ohio Railway Co.,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934), the Court held that the original Federal Safety Appliance Act,

> while prescribing absolute duties, and thus creating correlative rights in favor of injured employees, did not attempt to

lay down rules governing actions for enforcing these rights. The original act of 1893 made no provision for suits, except for penalties. That act did impliedly recognize the employee's right of action by providing in section 8 that he should not be deemed to have assumed the risk of injury occasioned by the breach of duty. But the act made no provision as to the place of suit or the time within which it should be brought, or as to the right to recover, or as to those who should be the beneficiaries of recovery, in case of the death of the employee.

*Id.* at 215, 54 S.Ct. 402. Thus, the *Moore* Court "held that the adjudicatory consequences of the Federal Safety Appliance Act were limited to those expressly provided by Congress." 71 Notre Dame L.Rev. at 865.

Moore was followed by the Supreme Court's decision in *Erie Railroad v. Tompkins,* which, although not itself an implication case, rejected the ability of federal courts to create federal common law in diversity cases.... In the wake of Erie, federal courts appeared less willing to borrow state law negligence concepts to justify implying causes of action from federal statutes.

Following Erie, the Supreme Court frequently denied private rights of action. In doing so, the Court focused upon the availability of other means to enforce the statutory duty at issue....

Still, in the period prior to 1975, courts did create implied rights of actions when they were thought to be necessary to grant a plaintiff some remedy.

*Id.* at 866–67 (footnotes omitted).

The year 1975 brought the Supreme Court's ruling in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). There, the Court delineated a four-factor test:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the

legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. 2080 (citations omitted). However, *Cort's* "new method of analyzing implication questions," soon gave way to "an exclusive reliance on legislative intent." 71 Notre Dame L.Rev. at 867–68.

The movement started in *Cannon v. University of Chicago,* in which the Court held that there was a private right of action under section 901 of Title IX of the Education Amendments of 1972. Although the Court analyzed each of the four Cort factors, it expressly viewed the four factors as the means thorough which congressional intent could be discerned.

*Id.* at 868. *See also Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074, 1088 (5th Cir.1980) (Goldberg, J., dissenting) ("Only a cave dweller ... would not realize that there has been a remarkable change of attitude by the Supreme Court regarding the inference of private rights of action in the last fifteen years.") (quoted in *Home Health Services, Inc. v. Currie,* 531 F.Supp. 476 (D.S.C.1982)).

The manner by which the Court currently determines whether an implicit private cause of action is created by a federal statute is exemplified by *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979):

The question of the existence of a statutory cause of action is, of course, one of statutory construction. *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979); *see National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (hereinafter *Amtrak* ). SIPC's argument in favor of implication of a private right of action based on tort principles, therefore, is entirely misplaced. Brief for Respondent SIPC 22–23. As we recently have emphasized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of*

*Chicago, supra,* 441 U.S., at 688, 99 S.Ct. at 1953. Instead, *our task is limited solely to determining whether Congress intended to create the private right of action ....* 442 U.S. at 568, 99 S.Ct. 2479 (emphasis added). The Court has further elucidated:

> In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82. ·The ultimate question in cases such as this is whether Congress intended to create the private remedy—for example, a right to contribution—that the plaintiff seeks to invoke. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146; *Universities Research Assn., Inc., supra,* at 770, 101 S.Ct. at 1461. Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies.

*Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).

The Supreme Court's opinion in *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) is particularly instructive:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. *Touche Ross Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (remedies available are those "that Congress enacted into law"). The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Statutory intent on this latter point is determinative. *See, e.g., Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1102, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991); *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S.

804, 812, n. 9, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (collecting cases). Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* at 23, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146; *Touche Ross Co. v. Redington, supra,* at 575–576, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82. "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Lampf, Pleva, Lipkind, Prupis Petigrow v. Gilbertson,* 501 U.S. 350, 365, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (SCALIA, J., concurring in part and concurring in judgment).

Respondents would have us revert in this case to the understanding of private causes of action that held sway 40 years ago when Title VI was enacted. That understanding is captured by the Court's statement in *J.I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" expressed by a statute. We abandoned that understanding in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)—which itself interpreted a statute enacted under the *ancien regime*—and have not returned to it since. Not even when interpreting the same Securities Exchange Act of 1934 that was at issue in *Borak* have we applied *Borak's* method for discerning and defining causes of action. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., supra,* at 188, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119; *Musick, Peeler Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 291–293, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993); *Virginia Bankshares, Inc. v. Sandberg, supra,* at 1102–1103, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929; *Touche Ross Co. v. Redington, supra,* at 576–578, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82. Having sworn off the habit of venturing

beyond Congress's intent, we will not accept respondents' invitation to have one last drink.

532 U.S. at 286–87, 121 S.Ct. 1511.

## D. Application

 Adverting our discussion from the historical evolvement of the implied right of action doctrine to the case *sub judice,* we find nothing in the language of the statute to indicate Congress intended an implicit right to file a private cause of action against a physician for failing to file a Medicare claim. As the United States Supreme Court stated in *Northwest Airlines:*

> "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646.

451 U.S. at 94 n. 30, 101 S.Ct. 1571.

The Medicare Act provides for specific remedies in the form of sanctions and penalties, and this weighs against finding that Congress intended to create the remedy of a private right of action. Unless congressional intent can be "inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Id.* at 94, 101 S.Ct. 1571. Here, we are unable to discover any manifestation of intent on the part of Congress to create a right to bring a private action against the physicians for failing to properly file a Medicare claim pursuant to 42 U.S.C.A. § 1395w–4(g)(4).

## II. Negligence

We find the trial court properly granted summary judgment on the portion of the negligence cause of action based upon the Doctors' failures to file Medicare claims.

## A. Failure to File

 Mrs. Wogan contends the Doctors are liable for damages:

In negligently and recklessly failing to address the constant pleas from the Decedent and the Plaintiff for help in submitting a Medicare claim;

In negligently and recklessly failing to submit a Medicare claim on or about May 25, 2001, on or about June 22, 2001, on or about July 20, 2001, on or about August 24, 2001, and thereafter. . . .

Both of these claims arise specifically from the failure of the Doctors to follow the provision of 42 U.S.C.A. § 1395w–4(g)(4)(A) requiring them to submit a claim. Ms. Wogan relies on affidavits as well as guidelines, which refer to the Medicare Act and its requirement that physicians file claims. Essentially, Ms. Wogan is asserting an action for violation of the Medicare Act under the rubric of a state law claim. Accordingly, the trial court properly granted summary judgment to the Doctors on Ms. Wogan's cause of action for negligence based on the Doctors' failures to file a Medicare claim.

Ms. Wogan alternatively maintains the violations of the statute are either evidence of negligence per se, or "indicia of negligence" that should be considered in a broader scope than just as a violation of the Medicare Act. We disagree.

### B. Negligence Per Se

Negligence per se is negligence arising from a defendant's violation of a statute. *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 134, 558 S.E.2d 271, 275 (Ct.App. 2001). In *Rayfield v. South Carolina Department of Corrections*, 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988), we enunciated the test for determining when a duty created by statute will support an action for negligence:

In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect.

If the plaintiff makes this showing, he has proven the first element of a claim for negligence: viz., that the defendant owes him a duty of care. If he then shows that the

defendant violated the statute, he has proven the second element of a negligence cause of action: viz., that the defendant, by act or omission, failed to exercise due care. This constitutes proof of negligence *per se.*

*Id.* at 103, 374 S.E.2d at 914–15 (footnote omitted). "In a subsequent decision, our Supreme Court further extended the analysis by stating that 'the plaintiff must prove violation of the statute was causally linked, both in fact and proximately, to the injury.' " *Hurst v. Sandy,* 329 S.C. 471, 478, 494 S.E.2d 847, 850 (Ct.App.1997) (quoting *Whitlaw v. Kroger Co.,* 306 S.C. 51, 55, 410 S.E.2d 251, 253 (1991)).

In the instant case, the Medicare Act was not created to protect from a harm, but instead to create "a voluntary insurance program to provide medical insurance benefits in accordance with the provisions of this part for aged and disabled individuals who elect to enroll under such program[.]" 42 U.S.C.A. § 1395j. While section 1395w–4(g) provides a requirement for the filing of a Medicare claim, it was not designed to protect from a harm. It is an administrative section designed to maintain the orderly operation and handling of the program. Accordingly, we reject the claim that the references to the Medicare Act provide a basis for a negligence per se claim.

## C. Indicia of Negligence

▪ Finally, Ms. Wogan's argument that the references are only "indicia of negligence" does not satisfy the requirements of a negligence claim. A party must show a duty that was breached. *See Willis v. Wu,* 362 S.C. 146, 154, 607 S.E.2d 63, 67 (2004) (finding plaintiff in a medical malpractice action must show duty on the part of the physician); *Doe v. Marion,* 361 S.C. 463, 470, 605 S.E.2d 556, 560 (Ct.App.2004) ("In order to prove negligence, the plaintiff must show: (1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages."); *Andrade v. Johnson,* 356 S.C. 238, 245, 588 S.E.2d 588, 592 (2003) (same); *Regions Bank v. Schmauch,* 354 S.C. 648, 668, 582 S.E.2d 432, 443 (Ct.App.2003) (same). There is no duty to either Mr. or Ms. Wogan unless an implicit right of action exists under the

Medicare Act. Therefore, we find the trial court properly granted summary judgment to the Doctors on Ms. Wogan's claims of negligence based on the failure to file a Medicare claim.

### III. Breach of Third–Party Beneficiary Contract

▮ Ms. Wogan contends the trial court erred in granting summary judgment to the Doctors on her claim they breached their contract to provide Medicare-covered services. She maintains Mr. Wogan was a third-party beneficiary of the contract, and their failure to submit the claim renders them liable for breach. We disagree.

Generally, a third person not in privity of contract with the contracting parties has no right to enforce a contract. However, when the contract is made for the benefit of the third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person.

*Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct.App.1997) (citing *Bob Hammond Constr. Co. v. Banks Constr. Co.,* 312 S.C. 422, 440 S.E.2d 890 (Ct.App.1994)).

The only contract appearing in the record is the Medicare Participating Physician/Supplier Agreement. It states:

The above-named person or organization [Dr. Kunze], called "the participant," hereby enters into an agreement with the Medicare program to accept assignment of the Medicare Part B payment for all services for which the participant is eligible to accept assignment under the Medicare law and regulations and which are furnished while this agreement is in effect.

This document defines assignment, sets forth the effective date of the contract, and establishes the terms for termination of the agreement. The contract contains no provisions specifically detailing the requirement to submit a claim or any liability resulting from the physician's failure to file.

Nothing in the contract creates liability outside the Medicare Act. Because the Act does not confer a private right of action to sue a physician for failing to submit a claim, we refuse to allow an action against a physician on the ground he

breached his contract to provide services outlined in the Medicare Act.

## IV. Breach of Fiduciary Duty

■ Ms. Wogan argues the trial court erred in finding her claims that the Doctors breached their fiduciary duties were mere restatements of her claims for medical negligence. We disagree.

■ A fiduciary relationship is founded on the trust and confidence reposed by one person in the integrity and fidelity of another. *Ellis v. Davidson,* 358 S.C. 509, 519, 595 S.E.2d 817, 822 (Ct.App.2004); *Regions Bank v. Schmauch,* 354 S.C. 648, 670, 582 S.E.2d 432, 444 (Ct.App.2003); *Redwend Ltd. P'ship v. Edwards,* 354 S.C. 459, 476, 581 S.E.2d 496, 505 (Ct.App.2003), *cert. denied* (Mar. 18, 2004). A fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence. *Hendricks v. Clemson Univ.,* 353 S.C. 449, 458, 578 S.E.2d 711, 715 (2003).

South Carolina has recognized the doctor-patient relationship as a confidential relationship. *McCormick v. England,* 328 S.C. 627, 639, 494 S.E.2d 431, 437 (Ct.App.1997); *see also Hodge v. Shea,* 252 S.C. 601, 608, 168 S.E.2d 82, 85 (1969). However, this state has not found that medical negligence or malpractice will support a cause of action for breach of fiduciary duty. Nor have our courts found the failure of a doctor to offer assistance in filing a Medicare claim or other claim is a breach of fiduciary duty.

In *McCormick,* this Court found actionable a doctor's breach of the duty to maintain the confidences of his or her patient where no compelling public interest or other justification for the disclosure exists. *McCormick,* 328 S.C. at 640, 494 S.E.2d at 437. In *Hodge,* the court found a doctor owed a duty not to use undue influence in a sale of land over a patient with decreased mental capacity as a result of age and disease. *Hodge,* 252 S.C. at 608–09, 168 S.E.2d at 85.

In the action *sub judice,* Ms. Wogan's complaint asserted the cause of action for breach of fiduciary duty was based upon the Doctors' "fiduciary duty to provide appropriate medi-

cal treatment and care ... in his time of need and in a prompt, efficient, proper, professional, ethical, competent and appropriate manner." The complaint alleges the Doctors had duties to:

a. Promptly purchase the Sandostatin LAR while the Decedent, JAMES JOHN WOGAN, remained under their continuous care and treatment and then promptly submit a Medicare claim, failure to do so constitutes abandonment; or

b. Promptly require the Decedent, JAMES JOHN WOGAN, to sign an Advanced Beneficiary Notice, promptly purchase the Sandostatin LAR Depot and then promptly submit a Medicare claim, failure to do so constitutes abandonment; or

c. Provide the injection via an outpatient procedure; or

d. Answer the pleas from the Decedent and/or the Plaintiff for assistance in alternative means of financing a Thirty Thousand ($30,000.00) Dollar a year medication; or

e. Other duties.

These allegations are restatements of the basic charges raised in the medical negligence or malpractice cause of action in the complaint. We find the assertions do not rise to the level of a breach of fiduciary duty on the part of the Doctors. To hold the Doctors liable for failure to file the Medicare claim would render meaningless our ruling that there is no private right of action arising under the Medicare Act. Accordingly, we hold the trial court properly granted summary judgment to the Doctors on Ms. Wogan's cause of action for breach of fiduciary duty.

### V. Unfair Trade Practices

Ms. Wogan asseverates the court improperly granted summary judgment to Dr. Kunze on the cause of action for violation of the Unfair Trade Practices Act, section 39–5–140 of the South Carolina Code (Supp.2004). We disagree.

"An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *deBondt v. Carlton Motorcars, Inc.,* 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct.App.2000) (citation omitted). "Even a truthful statement may be deceptive if it is

has a capacity or tendency to deceive." *Id.* (internal quotation marks and citation omitted). To be actionable under the UTPA, the unfair or deceptive act or practice must have an impact upon the public interest. *Id.* (citing *Haley Nursery Co. v. Forrest*, 298 S.C. 520, 381 S.E.2d 906 (1989)). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004) (citing *Crary v. Djebelli*, 329 S.C. 385, 387, 496 S.E.2d 21, 23 (1998)).

The potential for repetition may be shown in either of two ways:

(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or

(2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.

*Id.*

Section 39–5–140 states:

Any person who suffers any *ascertainable loss* of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, *but not in a representative capacity,* to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of § 39–5–20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

S.C.Code Ann. § 39–5–140(a) (Supp.2004) (emphasis added).

The trial court granted summary judgment in favor of the Doctors because it found (1) Ms. Wogan brought the action in her representative capacity as the personal representative of her husband's estate; and (2) she, in her individual capacity, did not show evidence of an ascertainable loss suffered.

## A. Preservation

■ First, Ms. Wogan argues the trial court improperly based its grant of summary judgment on a ground not raised by the Doctors. This issue is not properly preserved. While Ms. Wogan noted in her motion to alter or amend pursuant to Rule 59, SCRCP, that the court *sua sponte* made findings of fact regarding the claim, she presented no argument or authority to show this was error. Thus, the issue was not properly presented to the trial court. *See In re Estate of Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 923 (Ct.App. 1998) (holding if a trial judge grants "relief not previously contemplated or presented to the trial court, the aggrieved party must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to preserve the issue for appeal").

## B. Theory of Recovery

■ At the summary judgment motion hearing, Ms. Wogan's counsel argued the basis for the claim was Dr. Kunze's continued billing of Mr. Wogan for the injections of Sandostatin LAR. Her counsel specifically stated the cause of action was supported without any reference to the Medicare Act. The bill was sent to Mr. Wogan and was based upon services rendered to him. Ms. Wogan never claimed an individual loss as a result of the "inaccurate, deceptive bill."

Ms. Wogan now maintains she suffered an ascertainable loss because she paid for the Sandostatin LAR at the pharmacy. However, payment of the drug did not form the basis of the argument she presented at the summary judgment hearing, and Ms. Wogan cannot now change her theory of recovery. *See Easterlin v. Green*, 248 S.C. 389, 395, 150 S.E.2d 473, 476 (1966) (finding a party may not argue one theory before the trial court and another on appeal); *see also Crawford v. Henderson*, 356 S.C. 389, 409, 589 S.E.2d 204, 215 (Ct.App. 2003) (citing *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *State v. Bailey*, 298 S.C. 1, 5–6, 377 S.E.2d 581, 584

(1989) (stating a party may not argue one ground at trial and then an alternative ground on appeal)).

## C. Ascertainable Loss

 Nevertheless, Ms. Wogan's Unfair Trade Practices Act claim is unprevailing on the merits.

Under S.C.Code Ann. § 39-5-140(a) (1985), any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages.

*Reynolds v. Ryland Group, Inc.* 340 S.C. 331, 333, 531 S.E.2d 917, 918-19 (2000).

We are constrained to analyze the Unfair Trade Practices Act claim with reference to Ms. Wogan's original contention that the unfair trade practice was Dr. Kunze's billing for the administration of the Sandostatin LAR. There is no evidence in the record that Ms. Wogan paid this bill for $11.76. Furthermore, the medical services at issue here were rendered to Mr. Wogan. She has not demonstrated an ascertainable loss based on the alleged unfair billing.

## D. Representative Capacity

 Finally, an unfair trade practices claim may not be brought in a representative capacity. S.C.Code Ann. § 39-5-140(a) (Supp.2004) ("Any person who suffers any ascertainable loss of money ... as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, *but not in a representative capacity,* to recover actual damages.") (emphasis added). Losses incurred by Mr. Wogan are inapposite here because Ms. Wogan is not permitted to assert a claim on his behalf. Because she did not demonstrate an ascertainable loss, and an action for losses incurred by Mr. Wogan cannot be maintained, we find the trial court properly granted summary judgment.

## VI. Dr. Thomas

 Ms. Wogan contends the trial court improperly granted summary judgment to Dr. Thomas on the ground he never prescribed the medication. We disagree.

 In order to support a cause of action for negligence, the plaintiff must prove the existence of a duty. *See Sabb v. South Carolina State Univ.,* 350 S.C. 416, 429, 567 S.E.2d 231, 237 (2002); *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999). "Generally, there is no common law duty to act. . . . Thus, a person usually incurs no liability when he fails to take steps to protect others from harm not created by his own wrongful conduct." *Dennis by Evans v. Timmons,* 313 S.C. 338, 342, 437 S.E.2d 138, 141 (Ct.App.1993).

We find the court properly granted summary judgment to Dr. Thomas and Gary W. Thomas, M.D., P.A., because Dr. Thomas never prescribed the medication Sandostatin LAR and had no duty to file a claim with Medicare, or to help Ms. Wogan file a claim with Medicare. Indubitably, Dr. Thomas has no duty to file a Medicare claim for medicine he has not prescribed. Accordingly, we rule the trial court properly granted summary judgment to Dr. Thomas and Gary W. Thomas, M.D., P.A. due to the inability of Ms. Wogan to demonstrate they owed her or her husband a duty.

## *CONCLUSION*

We hold there is no private right of action created, either expressly or implicitly, by the Medicare Act. The trial court properly granted summary judgment to the Doctors on Ms. Wogan's claim for negligence arising from their failures to file Medicare claims and on her claim for breach of third-party beneficiary contract because the claims were an attempt to create a private cause of action where none exists. We find the court properly granted summary judgment on Ms. Wogan's claim for unfair trade practices. Finally, we rule the court did not err in granting Dr. Thomas and his practice summary judgment on the ground Ms. Wogan failed to prove they owed her or her husband a duty to file a claim or to assist

her in filing a claim for medicine he did not prescribe. The decision of the trial court is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.